# Mostoller, Appellant, *v.* Baltimore & Ohio Railroad Company.

*Negligence—Railroads—Grade crossings—"Stop, look and listen."*

In an action against a railroad company by the driver of a wagon to recover damages for personal injuries sustained at a railroad crossing, binding instructions for the defendant are proper where it appears that the plaintiff was familiar with the crossing, and when 625 feet from it he saw a long train of loaded coal cars passing over it; that at a

point 425 feet from it, he stopped at a watering trough at the roadside to water his horse, and drove from there to the crossing at a slow walk, without again stopping; and that from the watering trough he had a view of the road for 1,700 feet in the direction from which the engine came, and that from any point within 200 feet of the crossing this view was extended to about 3,500 feet.

Argued Oct. 5, 1911.   Appeal, No. 99, Oct. T., 1911, by plaintiff, from judgment of C. P. Somerset Co., May T., 1907, No. 282, on verdict for defendant in case of Newton A. Mostoller v. The Baltimore & Ohio Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Affirmed.

Trespass to recover damages for personal injuries.

The facts are stated in the opinion of the Supreme Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant.   Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*W. H. Ruppel*, with him *Charles F. Uhl, Jr.*, for appellant.

*J. G. Ogle*, for appellee.

PER CURIAM, January 2, 1912:

It appeared from the plaintiff's testimony that his injury was caused by his failure to exercise the care which the law exacts of a driver before crossing the tracks of a steam railroad.   He was familiar with the crossing and when 625 feet from it, he saw a long train of loaded coal cars passing over it.   At a point 425 feet from it he stopped at a watering trough at the roadside to water his horse, and drove from there to the crossing at a slow walk, without again stopping.   From the watering trough he

had a view of the road for 1,700 feet in the direction from which the engine came and from any point within 200 feet of the crossing, this view was extended to about 3,500 feet. The night was dark and as the plaintiff moved forward from the watering trough his attention was mainly, if not wholly, directed to observe teams approaching on the country road in order to avoid collision with them.

It does not appear from his testimony that he at any time stopped for the purpose of looking and listening for a train, and it certainly does appear that he did not stop at a place where stopping would have been of any avail. If he looked and listened when at the watering trough, which is very doubtful under his testimony, it was his duty to stop again near the track, where he would have had a better opportunity to use his senses of sight and hearing. It was said in Aiken v. Railroad Co., 130 Pa. 380, "Stopping is an essential part of the rule, to enforce attention to the accompanying duties of looking and listening, and to secure their performance in something more than a perfunctory and heedless way."

A verdict was properly directed for the defendant and the judgment is affirmed.